## DAVID G. WELLS

*v.*

## SOLOMON LAMMEY *et al.*

1. GOVERNMENT LAND—*waiver of right to patent on right tract by accepting one for another.* A party entitled to a patent, under the lottery system, for the north-west quarter of a certain section, by accepting a patent issued to him for the south-west quarter of the same section, and his subsequent conveyance of the latter tract, waives his right to claim title to the first named . tract; and his grantee, by obtaining a still different tract, by act of Congress, in lieu of the one granted to his grantor, by surrendering the title of the one held by him to the United States also waives all right to insist upon a conveyance to him of the tract intended for his grantor, and leaves the title to the tract intended for the patentee in the government to be disposed of according to law, and any one afterwards acquiring a patent thereto is entitled to protection.

2. PATENT—*who may question right to.* Where a patent, by mistake, is issued for a wrong tract, and the United States returns the same as sold and subject to taxation, and the same is sold for taxes, and the grantee of the patentee,

after the tax sale, finding the same to be a fractional quarter, by act of Congress is allowed to surrender his title and enter another tract, and such tract is afterwards patented to another, the party holding the tax title with twenty years' possession, not claiming under the United States, has no equities entitling him to relief in a court of equity preventing the assertion of the title under the patent subsequently issued.

3. CHANCERY—*jurisdiction to settle legal title.* The questions whether land sold for taxes was subject to taxation and properly sold for non-payment of taxes, and whether twenty years possession under the tax title can be relied on to defeat a subsequent patent issued after surrender of the one first issued, and whether the tax title is valid, are all questions of law, that may be determined ·in an action of ejectment, and consequently a court of equity has no jurisdiction to settle the rights of the parties holding under the last patent and under the tax title.

4. When there is a complete remedy at law a court of equity will not assume jurisdiction and take the case from a court of law.

APPEAL from the Circuit Court of Calhoun county; the Hon. CYRUS EPLER, Judge, presiding.

Mr. JOSEPH S. CARR, for the appellant.

Messrs. DUMMER, BROWN & RUSSELL, for the appellees.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

The appellant brought an action of ejectment against appellees to recover a portion of the north-west quarter of section 35, township 13 south, range 2 west, in Calhoun county. He claimed title under a patent issued by the United States, to Aaron K. Stiles, July 1, 1861, Stiles having conveyed to one Steele, and he to appellant. Appellees claim under a tax sale of 1840, for the taxes of 1839, and also claim twenty years' adverse possession. After a trial, in which appellant recovered, appellees filled a bill in equity to enjoin appellant from using the patent on a trial of the action, and that he be required to convey to them. On the hearing, the court found that the patent had been wrongfully issued in derogation of the rights of appellees, and decreed that appellant should not use the same on trial of the action of ejectment. The facts in regard

to the conveyance of the quarter of land in dispute, by the general government, are substantially the following:

On the 11th day of March, 1812, warrant No. 15,828, for 160 acres of land, issued for the services of Edward Smith as private in Bucklin's company, 9th regiment United States Infantry, was located under the "lottery system" in the name of John Smith, father and heir at law of Edward Smith, deceased, on the north-west quarter, section 35, township 13 south, range 2 west, 4th principal meridian, Illinois. The patent, however, issued the same day, calls for the south-west quarter, section 35, township 13 south, range 2 west. The record of the patent, which was canceled March 13, 1843, is for the north-west quarter, section, town and range aforesaid. It further appears, that one Daniel B. Bush, through mesne conveyances from the said John Smith, father, etc., became possessed of the title to said south-west quarter, section 35, etc., and, finding that the same was fractional, containing only 37 $\frac{95}{100}$ acres, applied to Congress for relief, and on the 11th day of August, 1842, an "Act for the relief of Daniel B. Bush" was passed, which authorized him to relinquish to the United States the said south-west quarter, section 35 etc., and "to enter any other quarter section" in the land district in which said fraction is situated, in the State of Illinois, which should be liable to entry at "private sale," etc. See United States Statutes at large, Little & Brown's edition, vol. 6, p. 850. In virtue of said special act of Congress, the said Bush selected the south-west quarter, section 12, township 4 south, range 5, etc., Illinois, and having complied with the conditions of said law, a patent therefor was issued to him April 17, 1845. It further appears, that said south-west quarter, section 35, etc., was entered by one Bennett Thompson, August 17, 1835, in virtue of cash certificate No. 3975, and that the north-west fractional quarter, section 35, township 13 south, range 2 west, Springfield, Illinois, was patented to Aaron K. Stiles, July 1, 1861, in virtue of warrant No. 94,814, for 160 acres, issued under act of March 3, 1855.

It will be observed that this is not a controversy between John Smith, the patentee, or those claiming any rights in the premises through or under him, and a subsequent grantee of the land from the government. Appellees claim no interest whatever in the patent title to the land; they base their right solely upon a tax title and adverse possession for twenty years.

Smith, the patentee, or his grantees, find no fault whatever with the act of the government in granting the land to Stiles, in 1861.

The first and most important question, then, that arises upon the record · is, whether appellees have any right to invoke the aid of a court of equity to question the act of the government or its grantees, in regard to a title to land in which they have no interest and to which they are utter strangers. We have not been able to discover any tangible ground upon which a court can hold that they have the right to ask the aid of a court of chancery in regard to the transaction. The land warrant held by Smith, was, no doubt, located on the north-west quarter of section 35, and he was doubtless entitled to a patent for that tract of land, but the patent issued to him for the south-west quarter of section 35, which he accepted, and, as we must presume, without objection, from the fact that he subsequently conveyed that quarter section to Bush, and Bush, after receiving a conveyance, applied to Congress for relief, and obtained another quarter section of land in lieu of the one conveyed to him, on the surrender of the title obtained of Smith. When Smith, the patenteé, conveyed the land the government granted to him by patent, he waived the right to claim title to the northwest quarter of section 35, to which he was originally entitled, and when his grantee, Bush, obtained, by act of Congress, another quarter, upon the surrender to the government of the title which he had acquired of Smith, he, too, waived all rights he may have had to insist upon a conveyance to him of the land intended for the patentee, Smith. This, then, left the title to north-west quarter of section 35 in the government, which

it had a perfect right to dispose of in the mode prescribed by law, and as Stiles entered the land in the manner required by law, we perceive no reason why he should not be protected in his purchase. But it is said, appellees have equities which a court of chancery should protect as against the patent issued in 1861. The facts, however, that the land was returned by the United States to the State as having been sold, and subject to taxation, and sold for the non-payment of taxes, and the tax title acquired by appellees, and the possession of the land taken and held for twenty years, if such be the case, do not show equities in favor of appellees, cognizable in a court of chancery. The title to the land, whatever it may be, held by appellees can be proven and protected in an action at law, and if it be superior to that held by appellant, a court of law has full and ample power to settle that question in the action of ejectment. It is the peculiar province of a court of law to determine and settle questions of title, on the trial of an action of ejectment. If the land was subject to taxation in 1839, and properly sold for the non-payment of taxes in 1840, a court of law can determine that question as well as a court of equity. If the patent title was so held that twenty years' adverse possession can be relied upon to defeat a recovery under it, that question can be determined on the trial of the action of ejectment; so, too, the validity of the tax title can be passed upon in a court of law. Indeed, each and every question that will properly arise under the allegations of the bill, are questions for a court of law and not of equity. It is true, in some of the deeds in appellees' chain of title, mistakes are alleged in the description of the premises, but it does not appear to be the object and purpose of the bill to correct them. The necessary parties were not before the court for that purpose, nor does the decree attempt to afford any relief in that direction. The whole scope and purpose of the bill, so far as we understand it, was to transfer the trial of an action of ejectment from a court of law to a court of equity. This can not be done. The doctrine, that where there is a complete remedy at law, a court

of equity will not take jurisdiction, is so familiar and so well understood that the citation of authorities in its support is not necessary.   The decree will be reversed and the cause remanded.

*Decree reversed.*